[No. 15899.   In Bank.—October 14, 1897.]

UNION TRANSPORTATION COMPANY, Respondent, v. C. P. BASSETT et al., as Board of State Harbor Commissioners, Respondents.

Board of State Harbor Commissioners—Control of Position of Vessels—Discretion to Change Place of Landing—Noninterference of Court. The board of state harbor commissioners has power, and has a large discretion vested in it by law, to station, berth, and regulate the position of vessels in the docks and harbor in the bay of San Francisco, and to cause them to remove from time to time, and from place to place, as the general convenience, safety, and good order may require, and if its discretion is honestly exercised to change the place of landing of a vessel, a court of equity cannot interfere with its exercise or substitute the judgment of the court for that of the board, notwithstanding the conclusion of the board may appear erroneous, and the result may work hardship to the owner of the vessel.

Id. — Removal of Steamboat Station — Insufficiency of Wharf Room—Fraud—Injury to Business—Aid of Rival Line—Injunction—Equity Jurisdiction.—Although a court of equity has jurisdiction to enjoin the action of the board of state harbor commissioners in the removal of the place of landing of a vessel, where its action is shown to be characterized by fraud, corruption, improper motives, or influences, plain disregard of duty, or violation of law, yet, in the absence of such showing, where it appears that, in the judgment of the board, the removal of the place of landing of a river steamboat was necessary to relieve the congested condition of traffic, and that the steamboat

was the last vessel placed at the landing from which it was removed, the fact that the removal will produce great and irreparable injury to the business of the steamboat, and will aid a rival line by leaving it in the possession of the field, will not give jurisdiction to a court of equity to enjoin or interfere with the exercise of the discretion of the board to order such removal.

ID.—FRAUD—BURDEN OF PROOF—SUSPICION NOT SUFFICIENT—PRESUMPTIONS.— Before a court of equity will interfere with the action of the board on the ground of fraud, the plaintiff must clearly establish the fact of fraud, and the proof must amount to more than mere suspicion, which cannot overcome the presumption which is always in favor of the good faith and fair dealing of public officers; and it will be presumed, in the absence of clear proof to the contrary, that the congested condition of the traffic could not have been relieved by other changes of vessels without equally harsh results.

ID.—INADMISSIBLE EVIDENCE—FRAUDULENT REPRESENTATION OF THIRD PERSON —BRIBERY.—Evidence is not admissible to show that a third person represented to plaintiff that for a specified sum of money he could obtain from the harbor commissioners a rescission of the order of removal, and that the money would be used in "fixing certain parties," in order to prevent the removal, where it was not shown that such third person was in any way connected with the board of state harbor commissioners, nor that any of the board authorized or knew of the proposal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   William T. Wallace, Judge.

The facts are stated in the opinion of the court

F. S. Stratton, and Tirey L. Ford, for Appellants.

The exercise of discretion by a public board cannot be interfered with by injunction, in the absence of fraud, though it may be unwise or improvident.   (2 High on Injunctions, 964, 965; *Davis v. Mayor etc.*, 1 Duer, 451, 497; *Spring Valley Water Works v. San Francisco*, 82 Cal. 286, 306, 308, 309; 16 Am. St. Rep. 116; *McKinley v. Chosen Freeholders*, 29 N. J. Eq. 164; *Argo v. Barthand*, 80 Ind. 66; *Fitzgerald v. Harms*, 92 Ill. 375; *Andrews v. Board of Supervisors etc.*, 70 Ill. 65; *Wiley v. Alleghany County Commrs.*, 51 Md. 401, 404; *Warfel v. Cochran*, 34 Pa. St. 384; *People v. Mayor etc.*, 32 Barb. 113; *Lane v. Morrill*, 51 N. H. 422.)   The order of removal having been made by competent authority, there was no infringement of any vested or property right of the plaintiff.   (*Knoxville v. Bird*, 12 Lea, 121; 47 Am. Rep. 326; *Salem v. Maynes*, 123 Mass. 374; *Jack-*

*sonville v. Ledwith,* 22 Am. St. Rep. 582; *Railroad Co. v. Richmond,* 96 U. S. 529; *New Orleans v. Stafford,* 27 La. Ann. 417; 21 Am. Rep. 563.) Evidence to impugn the motives of the board was inadmissible. (*Soon Hing v. Crowley,* 113 U. S. 708; *Ex parte Chin Yan,* 60 Cal. 82; 1 Dillon on Municipal Corporations, 311.)

Pillsbury, Blanding & Hayne, and Reddy, Campbell & Metson, for Respondent.

The action of the board of state harbor commissioners, was unreasonable, oppressive, unjust, and unfair, and tended to create a monopoly in the river traffic, restrain competition in trade, and deprive plaintiff of valuable property rights without due process of law, and should be restrained as invalid and void. (Tiedeman on Police Power, secs. 194, 204; Dillon on Municipal Corporations, sec. 362, and note; *Ex parte Frank,* 52 Cal. 606, 610; 28 Am. Rep. 642; *St. Louis v. Weber,* 44 Mo. 547; *Mayor v. Radecke,* 49 Md. 217; 33 Am. Rep. 239; *Tugman v. Chicago,* 78 Ill. 405; *State v. Loomis,* 115 Mo. 307; *Ritchie v. People,* 155 Ill. 98, 105; 46 Am. St. Rep. 315.) The acts of public bodies, other than the legislature, may be impeached for fraudulent motives. (Dillon on Municipal Corporations, sec. 311; *Spring Valley Water Works v. San Francisco,* 82 Cal. 286; 16 Am. St. Rep. 116; *Davis v. Mayor etc.,* 1 Duer, 451, 498.)

HENSHAW, J.—Appeals from the judgment and from the order denying defendants a new trial. Plaintiff was the owner of a steamboat which plied between the cities of San Francisco and Stockton, carrying produce and passengers. It docked at Clay street wharf in the former city. The defendants, harbor commissioners, by order changed its place of landing to Mission street wharf, whereupon plaintiff instituted this action to enjoin defendants from carrying their order into effect. Plaintiff pleaded that it was engaged in the river trade; that it was essential to the successful conduct of its business, which was principally that of carrying produce, that it should have wharfage facilities at either Clay or Washington street wharves; that the order of removal was arbitrary and made without reason, saving to discriminate against it and in favor of its competitor engaged in the same general business, to prevent it from conducting its business and exercising its rights as a common car-

rier, and utterly to ruin and destroy its business and to render its property useless and valueless. Plaintiff further pleaded that the order of removal, if executed, would bring about these results.

Defendants answered denying these allegations. They pleaded the authority and discretion conferred upon them by law, and averred that the order was made pursuant thereto in good faith, and because in their judgment the public interests and the interests of commerce demanded it.

The court made the following findings:

### FINDINGS OF FACT.

"All and singular the allegations contained and set forth in the complaint, and in the amendment to the complaint, at the trial are true in point of fact, and were true at the commencement of the action; the order made by the defendants in the month of August, 1892, purporting to change the docking place and berth room of the plaintiff's boats from Clay street, where they then were, was arbitrary, and was made without any just cause, and without any reason, or notice, or motive therefor on the part of the defendants other than that of injuring and damaging the plaintiff in its transportation business, and to assist others, its rivals and competitors in the business, in forcing the plaintiff to discontinue the running of its said boats; the orders and action of the defendants in and about the removal of the plaintiff's said boats from said Clay street wharf were not made or taken by the defendants for any reason, or upon any ground, or with any intent such as they have alleged in their answer therein, but were made only with the intent and for the purpose on their part as is alleged in the complaint in their behalf."

In accordance with these findings the perpetual injunction prayed for was granted.

At the trial the evidence without substantial conflict disclosed the following facts: At and before the time when plaintiff engaged in river traffic another company (for convenience called the "old line") was operating steamboats between San Francisco and Stockton, with berths at the Washington street wharf, a wharf next to Clay street, upon the north. Plaintiff represented to the harbor commissioners its desire and intention to compete with the old line for the river business, provided its boats could

be given favorable berths. The produce of the San Joaquin river had for many years been landed at one or all three adjoining wharves—Clay street, Washington street and Jackson street. These wharves were convenient to the quarter of the city where the commission merchants had their places of business, and they and their buyers had become accustomed to visit these wharves for purposes of traffic. The importance to the plaintiff of obtaining a berth at Clay street wharf was represented to the harbor commissioners, and they appreciated it. Upon the other hand, because of the condition of affairs at that wharf the commissioners were reluctant to give them the desired landing. The wharf was small; the waterway between it and the adjacent wharf exceptionally narrow; the Humboldt, a deep sea steamer, the McDowell, a government steamer, and the barges of the North Pacific Coast Railroad Company all docked there. To add to this list a large river steamer would, the commissioners believed, render navigation perilous, and leave insufficient wharfage for the freight of the different vessels. However, the commissioners decided to try the experiment, and granted plaintiff's boat a landing place. To relieve the congested condition they also moved the Humboldt to the next, or Washington street wharf.

Plaintiff put its boat, the Webber, into service, and complaints began to come to the board. The officers of the United States government, upon the part of the McDowell, the officers of the railroad company and of the Humboldt, all protested and objected. It was urged that the presence of the new boat greatly endangered navigation of the slip; that it had been responsible for at least two collisions, and that other and more serious ones were liable at any time to occur; that all vessels were often put to much inconvenience and delay in making their berths; that the wharf room was insufficient, and that plaintiff with its freight constantly encroached upon and occupied space allotted to and paid for by the other companies. Aside from these representations the commissioners, from personal observation, reached the conclusion that a state of affairs dangerous to navigation and public safety existed. The condition would be aggravated when plaintiff put into service a second boat, as it was about to do. They therefore passed the order under consideration. By this plaintiff's boats were transferred to Mission street wharf. Mis-

sion street wharf is some distance south of Clay street wharf. Between the two are the slips of the Oakland, Alameda, and San Rafael ferries, and a small wharf known as La Rue's wharf. The commissioners testified that in their judgment it was necessary to make some removal to relieve the congested condition of traffic. As the plaintiff's boat was the last placed at Clay street wharf, and was responsible for the existing conditions, it seemed to them but just that the inconvenience or hardship of removal should fall on it. Mission street wharf was the nearest and most suitable wharf available under the circumstances.

Upon the part of the plaintiff it was shown that the effect of the order would be to subject it to great and perhaps irreparable injury. The officers of plaintiff testified that they could not with profit or success operate their business at Mission street wharf, and the result of an enforcement of the order would be to compel them to violate transportation contracts which they had entered into with shippers, whereby they had agreed to land their produce at Clay street wharf, would thus subject them to meritorious actions for damages, would force them to conduct their business at a great loss, or to abandon their enterprise, leaving their business competitors, the old line, in undisputed possession of the field. Their evidence in this regard finds corroboration in the testimony of many commission merchants, and in the experience of another opposition boat which some years in the past had been transferred to Mission street wharf, and thereby had experienced such heavy loss of patronage as to render its business unprofitable.

The powers of the harbor commissioners are defined by the code. They are authorized to "station, berth, and regulate the position of vessels in the docks and harbor, cause them to remove from time to time and from place to place, as the general convenience, safety, and good order may require." (Pol. Code, sec. 2522.) They "shall have possession and control of that portion of the bay of San Francisco [described], together with all the improvements, rights, privileges, easements, and appurtenances connected therewith, or in anywise appertaining thereto, for the purposes in this article provided. . . . . The commissioners shall have power to make reasonable rules and regulations concerning the control and management of the property of the state which is intrusted to them by virtue of this article; . . . .

[shall] set apart and assign suitable wharves, berths, or landings for the exclusive use of vessels." (Pol. Code, sec. 2524.) It will thus be observed that a large discretion is vested by law in the harbor commissioners, a discretion with which, if it be honestly exercised, a court of equity will not feel itself at liberty to interfere, or to substitute its judgment for that of the board, even if the conclusion of the latter should be erroneous and the result work hardship to an individual. The doctrine perhaps cannot be better stated than in the language of Seymour, J., in *Dailey v. New Haven,* 60 Conn. 314: "In the very recent case of *Whitney v. New Haven,* 58 Conn. 450, this court held that whenever bodies like boards of common council are acting within the limits of powers conferred on them, and in due form of law, the right of courts to supervise, review, or restrain is exceedingly limited. With the exercise of discretionary powers courts rarely, and only for grave reasons, interfere. Those grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize the result. Difference of opinion or judgment is never a sufficient ground for interference." In *Spring Valley Water Works v. San Francisco,* 82 Cal. 286, 16 Am. St. Rep. 116, this court adopted as a statement of the principle the language of *Davis v. Mayor,* 1 Duer, 451, where it is said: "The meaning and principle of the rule are that the court will not substitute its own judgment for that of the party in whom the discretion is vested, and thus assume to itself a power which the law had given to another; and the limitations to which the principle is subject are that the discretion must be exercised within its proper limits for the purposes for which it was given, and from the motives by which alone those who gave the discretion intended that its exercise should be governed." This citation of authorities might be indefinitely multiplied, but it is sufficient to say that with much uniformity the cases recognize the principle as above given.

But, while courts of equity will not refuse to interfere in proper cases, the showing to justify their interference must be clear. The mere difference of opinion between the chancellor upon the one hand, and the board upon the other, will not suffice. It is not to be expected that power will always be ex-

ercised with the highest discretion, and even in those cases where upon the showing the court would without hesitation declare that, occupying the position of the board, it would not have made the order or passed the ordinance in question, still this reason will not be considered sufficient to justify the substitution by the court of its judgment for that of the tribunal in which the law has seen fit to lodge the power. (*White v. Kent*, 11 Ohio St. 553; *Wiley v. Alleghany County Commrs.*, 51 Md. 404; *St. Louis v. Weber*, 44 Mo. 550; *Knoxville v. Bird*, 12 Lea, 121; 47 Am. Rep. 326.)

Considering the evidence in the light of these principles, it will be noted that in the recital above given two facts are prominent and important: one, that the congested condition of traffic at Clay street wharf necessitated the removal of some boat or boats; the other that the removal of plaintiff's boat subjected its business to great loss, if not to destruction. The specifications in the bill as to the reasons which moved the defendants to the making of the order, and the motives which prompted their conduct, amount to an express charge of fraud and oppression. If this charge be sustained, and if private rights would be infringed by the enforcement of the order, then clearly the plaintiff has shown ground for equitable relief.

It will not be contended that because plaintiff was allowed to dock its boats at Clay street wharf it acquired a vested right to dock there. Nor can it be successfully contended that the order was unreasonable and should not be enforced because plaintiff had contracted with shippers to deliver their produce at Clay street wharf, for plaintiff will conclusively be held to have contracted in view of the right of the harbor commissioners to remove their boats to another landing, if in the fair exercise of a reasonable discretion they should deem it necessary to do so. (*Knoxville v. Bird, supra.*) So, also, the fact that the enforcement of the order of removal would injure plaintiff's business and advantage its rival is not in and of itself determinative. "Chances and advantages or disadvantages in trade or business cannot be regulated by judgments of courts." (*Villavaso v. Barthet*, 39 La. Ann. 247.) As was pointed out by this court in the very recent case of *Mutual etc. Light Co. v. Ashworth*, 118 Cal. 1, great individual hardship may result in the execution of discretionary powers, and yet courts of equity be powerless to

grant relief by injunction. If remedies exist for the injuries and ofttimes for the wrongs thus committed they must be enforced by other procedure.

But if, on the other hand, the act will not only result in injury, but is prompted with the design of injuring one and aiding the other company, and that fact is clearly established, the relief prayed for should be granted. Such are the averments here. It is quite true that in most cases fraud and improper motives are proved by indirect evidence. The truth is to be discovered more often from circumstances, from the interest of the parties, from the irregularities of the transaction coupled with injury worked to an innocent party, than from direct and primary evidence of the fraudulent contrivance itself. (*Levy v. Scott*, 115 Cal. 39.) But at the same time, before a court of equity will feel justified in interfering with an act which, save for its fraudulent conception and design, would be an act within the power of the tribunal to execute, the proof must amount to more than a suspicion and clearly establish the fact. In this case the evidence which we have summarized does not, we think, amount to such proof. It may well be argued that, were a court of equity sitting as the board of harbor commissioners, it would have made the order herein as a last resort and only when clearly satisfied that any other change or removal would have resulted in equally great or even greater hardship. But the court may not substitute its judgment for that of the board, and the evidence does not enable us to determine whether other changes might have been made to accomplish the purpose. As the presumption is always in favor of the good faith and fair dealing of public officers, it will be presumed that such changes could not have been made without equally harsh results. While it is made to appear that the McDowell would have been satisfied with another berth, it is not shown that the removal of the McDowell would have relieved the trouble; and the same is true of the Humboldt. Under this view of the evidence, there is thus left nothing (saving as hereafter discussed) upon which to base the court's findings of the fraudulent motives and intent of the commissioners, except the fact that the execution of the order would work to them great injury; but this fact, as has been said, is not determinative upon the question of the improper exercise of a discretionary power.

There is, however, other evidence in the case bearing upon the question of fraudulent motive and which would have been sufficient to support the finding had it been properly admitted in the cause. This was the evidence of certain of plaintiff's officers to the effect that a man had represented to them that for two thousand dollars he could obtain from the harbor commissioners a rescission of the order of removal; that the money would be used in "fixing certain parties" in order to allow plaintiff to remain at Clay street wharf. This evidence was objected to. It was not shown that the man was in any way connected with the defendants, or that any one of them authorized or knew of his proposal. The testimony, if admissible, and if believed by the court, would have a strong tendency to impugn the motives of the commissioners, and upon it alone, as we have said, could the findings of the court in this regard be sustained. But the evidence was so clearly inadmissible that discussion upon the question seems unnecessary. Indeed, its inadmissibility is conceded by respondent, who opposes appellant's objection to it by insisting that its admission was an immaterial error. But that respondent's counsel themselves regard it as material is sufficiently shown by their discussion of this very evidence when in their brief they are considering the proof of fraudulent motive.

The judgment and order are therefore reversed, and the cause remanded.

McFarland, J., Temple, J., Van Fleet, J., Garoutte, J., Harrison, J., and Beatty, C. J., concurred.