[Civ. No. 15052. First Dist., Div. One. Mar. 5, 1952.]

A. A. BROCK, as Director of Agriculture, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

WEST LOS ANGELES MILLING COMPANY (a Corporation) et al., Respondents, v. A. A. BROCK, as Director of Agriculture, Appellant.

Edmund G. Brown, Attorney General, and W. R. Augustine, Deputy Attorney General, for Petitioner and Appellant.

Doyle & Clecak and Tom F. Chapman for Respondents.

BRAY, J.—This petition for a writ of prohibition and a writ of supersedeas raises the questions (1) whether section 1094.5 of the Code of Civil Procedure provides for a review by the courts of quasi-legislative acts of administrative agencies, (2) whether, independently of that section there can be such a review, and (3) the extent of that review.

## RECORD

On the 14th day of September, 1950, petitioner, the Director of Agriculture, acting pursuant to the California Marketing Act of 1937 (Agr. Code, div. 6, ch. 10, comprising §§ 1300.10 to 1300.29) upon the written request of a committee of lima bean producers, processors and handlers, called a public hearing to consider a proposed marketing order for standard lima beans. It is conceded that said hearing was called, held and conducted in all respects as required by law. Thereafter, and on or about the 3d day of October, 1950, petitioner executed and issued a marketing order for standard lima beans to be submitted to producers and handlers for written assent as required by section 1300.16 of the Agricultural Code. Thereafter and on the 2d day of March, 1951, a finding was made that said marketing order for

standard lima beans had been assented to in writing by the requisite number of producers and handlers of lima beans, and petitioner issued an order making said marketing order for standard lima beans effective as of March 10, 1951. Pursuant to said California Marketing Act of 1937 and said marketing order for standard lima beans, and after nominations were received from the industry, the Director of Agriculture, on or about March 19, 1951, appointed the members and alternate members of the advisory board provided by the act. All of the members so appointed have qualified and accepted such appointments and are now members of said advisory board.

Thereafter a mandate proceeding was filed in the San Francisco Superior Court for a review of the marketing order on the ground that the findings of the Director of Agriculture are not supported by the weight of, or substantial, evidence. Petitioners therein (referred to here as respondents) include dealers in and growers of lima beans. Several are members of the advisory board. A restraining order was issued restraining the enforcement of the marketing order pendente lite. At the hearing respondents offered, in addition to the record of the proceedings upon which the marketing order was based, certain new evidence. The court refused to admit such evidence but issued a peremptory writ of mandate, commanding the director to call a hearing pursuant to the provisions of division 6, chapter 10 of the Agricultural Code and at such hearing to permit the introduction of said evidence, to reconsider his decision issuing the marketing order in the light of such evidence, and to make due return of his actions to the court. The restraining order was continued in force. The director appealed and the appeal is now pending. Thereafter the director filed this petition to prohibit the superior court from further proceedings other than to annul its previous actions. He also seeks a writ of supersedeas staying the enforcement of the superior court orders. A stay pending determination of the issues has been granted.

DOES SECTION 1094.5 OF THE CODE OF CIVIL PROCEDURE APPLY?

Although respondents contend that the action of the director in issuing a marketing order under the procedure provided in the Agricultural Code is quasi-judicial and not quasi-legislative, it is obvious that it is in the latter category. (See *Ray* v. *Parker*, 15 Cal.2d 275 [101 P.2d 665].) Pertinent sections of the Agricultural Code are known as "the Cali-

fornia Marketing Act of 1937." The purposes of the act are declared to be: to enable agricultural producers, with the aid of the state, to correlate more effectively their commodities with marketing demands therefor; to establish their orderly marketing, uniform grading, and proper preparation; to provide means for maintenance of present, and development of new or larger, markets, and to prevent, modify or eliminate trade barriers in agricultural commodities; to eliminate or reduce economic waste in the marketing thereof, and to restore and maintain adequate purchasing power for California agricultural producers. ■ It is not a price fixing statute. It provides for the promulgation of marketing orders after a public hearing. It sets forth the facts to be considered by the director at the hearing, the circumstances authorizing the issuance of a marketing order, the findings required to be made by him, and the provisions that may be contained in such order. It provides for the appointment of an advisory board of members of the industry to be appointed by the director. This board is to assist in the administration of the order. The order must be assented to in writing by 65 per cent of persons affected thereby. The act provides for administration, finances, enforcement, etc., in connection with the order.

■ While the language of section 1094.5 of the Code of Civil Procedure is broad enough to include the acts of the director in making the findings and marketing order, an examination of the legislative history of the section convinces us that it was not intended that the section apply to such acts or any quasi-legislative acts of an administrative body. This section, as well as the Administrative Procedure Act, was drawn and proposed by the Judicial Council under a directive of the 1943 Legislature to undertake a study of the procedure of California administrative agencies and of the judicial review of their decisions. Its Tenth Biennial Report, dated December 31, 1944, sets forth the scope of its study and the intent and purpose of the legislation proposed. That report makes it crystal clear that section 1094.5 of the Code of Civil Procedure, as well as the Administrative Procedure Act, was not intended to apply to the situation here. The value of the report in interpreting the legislation which the Judicial Council proposed is well stated by Mr. Justice Peters in *Hohreiter* v. *Garrison*, 81 Cal.App.2d 384, 397 [184 P.2d 323] : "This report is a most valuable aid in ascertaining

the meaning of the statute. While it is true that what we are interested in is the legislative intent as disclosed by the language of the section under consideration, the council drafted this language at the request of the Legislature, and in this respect was a special legislative committee. As part of its special report containing the proposed legislation it told the Legislature what it intended to provide by the language used. In the absence of compelling language in the statute to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the council in its report.''

There are many statements in the report dealing with the subject and demonstrating that the council and the legislation did not deal with quasi-legislative action. It is only necessary to make a few extracts from the report. ''Because of the primarily judicial interest of the Council, it was thought that its most valuable contribution could be made in the field of administrative adjudication rather than in the field of quasi-legislative action. For that reason no attempt has been made in this report to include the agencies which are primarily rule-making in nature. . . .

''. . . It was not possible to cover this extensive field of administrative activity in complete detail, and the Council considered it far more desirable to offer a careful and detailed proposal with respect to a portion of the field of administrative adjudication than to attempt to cover the entire field with a general, less precise statute. It was determined, therefore, to select a portion of the field of administrative adjudication which seemed most in need of improvement. This, the Council concluded, was the one occupied by the agencies engaged in licensing and disciplining the members of the various professions and occupations. The decisions of such agencies have been challenged frequently before the California courts and this group seemed to furnish the largest single category of State agencies.

''The Council's survey of administrative procedure has been limited, therefore, to this particular type of administrative adjudication. The proposed legislation is designed to provide a solution for many of the difficulties and injustices arising in the administrative licensing and disciplining of private citizens. The theories underlying the Council's proposals in this limited field are susceptible, of course, of adaptation to other kinds of administrative action; and it is the Council's

hope that this adaptation and extension of its work will be undertaken in the future."

". . . the Judicial Council, concerned primarily with judicial administration, would not be an appropriate body to supervise work in the field of quasi-legislative action." (Pp. 10, 11-12.)

Preceding the proposed section 1094.5 to be added to the Code of Civil Procedure appears: "PART 3. Act Providing Procedure for Judicial Review by Mandamus. This proposed amendment to the Code of Civil Procedure sets forth the procedure by which judicial review can be had by the writ of mandate after a formal adjudicatory decision by any administrative agency. It would apply specifically to cases arising under the Administrative Procedure Act (Part 2 of this appendix), but would also apply to the quasi-judicial proceedings of local administrative agencies." (P. 45.)

"The major proposal consists of an amendment to the sections of the Code of Civil Procedure dealing with the writ of mandate. Without affecting the historic uses of the writ it is suggested that, by the addition of a new section to the statute, the Legislature could prescribe the details of procedure where the writ is used for reviewing the adjudicatory decisions of administrative bodies. . . .

"The suggested amendment to the Code of Civil Procedure would be numbered Section 1094.5 and it is set forth in Part 3 of Appendix A in this report. The proposal is limited to cases involving administrative adjudication, . . ." (P. 27.)

It is manifest that the words "adjudicatory decisions" wherever used in the report refer to decisions in quasi-judicial proceedings alone since those were the only kind of proceedings with which the entire report was concerned. In the "Conclusion" appears: "There are many problems in California administrative procedure untouched by the Judicial Council's survey or by its recommendations to the Legislature. Some of these problems may be more important or more complex than those which have already been examined. The recommendation that a Department of Administrative Procedure be established in the state government is intended to provide a means for their ultimate solution but it might be useful to outline briefly the extent of the work which remains to be done.

"First, there are the fields of administrative action in which no investigation has been made by the Council. It

has already been pointed out that no attempt was made to cover the quasi-legislative activities of State agencies. . . . Many types of administrative adjudication were not covered by the Council's work, either because the function involved was not comparable to the disciplinary proceedings of licensing boards or because of the organization of the particular board. Thus, no attempt was made to cover preliminary investigatory proceedings, routine examination procedure, informal adjudications, or the formal adjudications of such agencies as the Industrial Accident Commission, the Railroad Commission, the State Personnel Board, the California Employment Stabilization Commission and many others. The omission of these problems and these agencies from the Council's survey was a limitation imposed by practical considerations and did not result from the conclusion that no improvement was needed." (Pp. 28-29.)

### WRIT OF MANDATE

■ This brings us to the question, to what extent, independently of section 1094.5 of the Code of Civil Procedure, can the writ of mandate be used to review the quasi-legislative action of an administrative body. The situation today, so far as determination of the matter is concerned, by the courts of this state, is the same as expressed in the before-mentioned report. "The courts have given no indication that the new mandate procedure is available where quasi-legislative administrative action is involved. The writ is available, however, to correct abuse of discretion on the part of an administrative agency where the action involved is quasi-judicial in nature. This is true whether the power is the limited quasi-judicial power of statewide administrative agencies, or the normal quasi-judicial power of local administrative agencies." (P. 140.)

"Historically, the writ of mandate was invented to provide a remedy where no other remedy existed. As is stated in 9 Halsbury's Laws of England, 744, section 1269, in speaking of the writ of *mandamus*:

" 'Its purpose is to supply defects of justice; and accordingly it will issue, to the end that justice will be done, in all cases where there is a specific legal right and no specific legal remedy for enforcing such right.' (See, also, 16 Cal.Jur. 764, sec. 4.) " (*Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75, 82 [87 P.2d 848].)

In the Drummey and other cases following it* our Supreme Court laid down some rules concerning mandate which, although there referring only to the review of license cases, probably would apply to any administrative board action reviewable by the courts. In the Drummey case, *supra* (13 Cal.2d 75, 82), the court said: ". . . in the absence of a proper statutory method of review, mandate is the only possible remedy available to those aggrieved by administrative rulings of the nature here involved." ". . . of the nature here involved" referred, of course, to the board's acts in revoking the petitioner's license. However, there certainly must be some way of reviewing the quasi-legislative acts of an administrative officer, at least to the extent of determining whether in issuing the order in question the proceedings were as prescribed by law, there was any evidence upon which to base his action, etc., and if there is no other adequate remedy, then the historic remedy of mandate must apply. As late as *Bank of Italy* v. *Johnson,* 200 Cal. 1 [251 P. 784], the general rule that mandate could not be employed to control the exercise of discretion by an administrative officer was reaffirmed. Yet in the Drummey case the court said (p. 83): "This rule applies only where a true discretion has been conferred by the statute. A proper illustration of this rule would be, where an administrative board is given power, if certain facts are found to exist, to take certain action, the statute providing directly or indirectly that the board is given discretion as to whether it will act after the facts have been ascertained, and providing that the board's determination shall be final. In such a case the determination as to whether the board will act is purely administrative, and its discretion cannot be controlled by *mandamus.*"

Interestingly enough, when it came to determining the act of an administrative officer in the initial application for a license, the court came to an opposite conclusion from that reached in the Drummey case involving the revoking of a license (*McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035]), and held that mandate cannot be used to control the discretion of an administrative officer unless an abuse of discretion is shown.

---

*Laisne* v. *State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457]; *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304]; *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20]; *Housman* v. *Board of Medical Examiners,* 84 Cal.App.2d 308 [190 P.2d 653]; *Southern Calif. Jockey Club, Inc.* v. *California etc. Racing Board,* 36 Cal.2d 167 [223 P. 1].

■ While originally mandate would not lie if there were other remedies available, that is no longer the situation in California. (See *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425].) Therefore, the fact that an action in declaratory relief lies (Gov. Code, § 11440) and there is some indication that in a proper case injunction will lie (see *Brock* v. *Superior Court,* 11 Cal.2d 682 [81 P.2d 931]; *Challenge Cream etc. Assn.* v. *Parker,* 23 Cal.2d 137 [142 P.2d 737, 149 A.L.R. 1203]; *Agricultural Prorate Com.* v. *Superior Court,* 5 Cal.2d 550 [55 P.2d 495]) does not prevent the use of mandate.

## Scope of Review

In the Drummey case, *supra,* and allied cases, the Supreme Court held that in mandate proceedings of the kind there permitted, the superior court had the right to exercise its independent judgment on the facts, and even to consider evidence which had not been before the administrative officer, thus granting a trial de novo, on law and facts. But in the McDonough case, *supra* (13 Cal.2d 741), the court held that in mandate proceedings of the type there being considered there could be no such trial de novo and that the superior court was limited to a determination of whether there was a sufficient factual basis for the conclusion of the commissioner and therefore he did not act arbitrarily or otherwise abuse his discretionary power. The court there expressly limited the Drummey type of mandate and hearing to situations where "due process required that a party aggrieved by reason of a ruling of the officer or board involving a constitutional right be accorded an opportunity to resort to a judicial tribunal for redress." (P. 753.) The type of action of the Director of Agriculture being considered here does not come within that definition. ■ In determining the scope of the review by courts of quasi-legislative acts of administrative officers, consideration must be given to the fact that the courts must not usurp legislative power and thereby violate the separation of powers provision of the Constitution. (See Public Administrative Law, 42 Am.Jur. 563-568, §§ 190-191.) "A statute conferring a power to review nonjudicial determinations of an administrative body is not invalid where the reviewing power is limited to questions of law which are the appropriate subject of judicial determination, particularly where the review provided is not de novo but is in the nature of certiorari and limited by the record made before the administrative body." (42 Am.Jur. pp. 565-566.)

■ It should also be pointed out that on review of judicial action of *local* administrative boards, the courts are limited to determining whether there was an abuse of discretion. Findings based on evidence cannot be set aside by the superior court. (See *Mogan* v. *Board of Police Commrs.*, 100 Cal.App. 270 [279 P. 1080]; *Hogan* v. *Retirement Board*, 13 Cal.App.2d 676 [57 P.2d 520]; and *Murphy* v. *Retirement Board*, 49 Cal. App.2d 58 [121 P.2d 101].)

In *Ray* v. *Parker, supra* (15 Cal.2d 275), where the court was considering the Milk Stabilization Act and a stabilization marketing plan formulated thereunder, the court quoted from "Assigned Car Cases" (274 U.S. 564 [47 Sup.Ct. 727, 71 L.Ed. 1204]): " 'It is not for courts to weigh the evidence introduced before the Commission . . . or to inquire into the soundness of the reasoning by which its conclusions are reached. . . . These are matters left by Congress to the administrative "tribunal appointed by law and informed by experience" . . .' " (P. 305.) The court also quoted from *Highland Farms Dairy* v. *Agnew*, 16 F.Supp. 575, to the effect that proceedings before the Virginia Commission under the Milk Control Act of that state to establish a milk marketing plan were "not quasi-judicial, but legislative." After discussing a number of authorities the court said (p. 310): "Under the foregoing authorities, and others cited earlier in connection with our discussion of the validity of the petition for formulation of a marketing plan, we cannot say that the action of the director in any particular has been arbitrary, capricious or so entirely lacking in evidentiary support as to warrant judicial interference with his several orders. In an action of this character challenging proceedings and hearings of the type here involved, it is not for the courts to *weigh* the evidence and data adduced before and considered by the director preliminary to his issuance of the several orders here challenged. Under the circumstances here present, judicial interference should occur only when it can be said that administrative action has been arbitrary and capricious. (*Silberchein* v. *United States, supra* [266 U.S. 221 (45 S.Ct. 69, 69 L.Ed. 256)]; *Union Transp. Co.* v. *Bassett, supra* [118 Cal. 604 (50 P. 754)].) As stated in *Maxwell* v. *Civil Service Com., supra* [169 Cal. 336 (146 P. 869)], 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible . . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' "

While the proceeding in the Ray case was by way of injunction, the fact that the court there held that in determining, the validity of the milk marketing plan put in effect by the Director of Agriculture, the procedure for establishing which was somewhat similar to that required to establish the marketing plan under consideration here, the court was limited in the scope of its inquiry into the acts of the commissioner, is quite persuasive of the limitation which should be applied here. In view of this and the express limitation of the de novo type of review laid down in *McDonough* v. *Goodcell, supra* (13 Cal.2d 741), it must be held that the de novo type of review does not apply to quasi-legislative acts of administrative officers and that the judicial review is limited to an examination of the proceedings before the officer to determine whether his action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether he has failed to follow the procedure and give the notices required by law. Particularly is this so when the type of proceeding provided by the Marketing Act is considered. First, there has to be a public hearing. Testimony and evidence must be received. The director, by publication of a notice, may require all handlers of the particular agricultural commodity to file with him a report of the matters set forth in section 1300.13(d) of the Agricultural Code. The director's findings are based "upon the facts, testimony and evidence received at the public hearing together with any other relevant facts available to him from official publications or institutions of recognized standing." (Agr. Code, § 1300.14.) The marketing order issued by the director after the hearing provides for an advisory board comprised of both producers and handlers of the commodity, whose duties include the recommendation of administrative rules and regulations relating to the marketing order and amendments to that order (§ 1300.15). Then the marketing order must be submitted to the producers and handlers or assent obtained thereto from not less than 65 per cent of them (§ 1300.16). To permit a trial de novo of such a situation would be not only substituting the judgment of the court for that of the director, but also of the assenting producers and handlers. The hearing required to be held by the director is not of the judicial type, but as said in *Ray* v. *Parker, supra* (15 Cal.2d 275, 307): ". . . this hearing was to be of the same nature as that held by a legislative committee in considering proposed legisla-

tion." Section 1300.14(d) above quoted, permits the director to do what the court in the Ray case quoted with approval that the Virginia Milk Commission had done in *Highland Farms Dairy* v. *Agnew, supra,* 16 F.Supp, 575, 586. " '. . . The Commission was undoubtedly justified in the exercise of its legislative function in taking into consideration not only the facts presented at the public hearing, but those which came to it subsequently from interested parties or were disclosed by its own investigation into the facts and the literature bearing upon the subject. See *State Board of Milk Control* v. *Newark Milk Co.,* 118 N.J.Eq. 504, 179 A. 116, 125, 126; *Norwegian Nitrogen Products Co.* v. *United States,* 288 U.S. 294, 296, 308, 53 S.Ct. 350, 355, 77 L.Ed. 796.' " It has been held that "There is no constitutional requirement for any hearing in a quasi legislative proceeding" and "Where the proceedings are quasi legislative in character, a hearing of a judicial type is not required; a hearing allowed by legislative grace is not circumscribed by the restrictions applicable to judicial or quasi judicial adversary proceedings." (*Franchise Tax Board* v. *Superior Court,* 36 Cal.2d 538, 549 [225 P.2d 905].)

For the proposition that the mandate proceeding here should be in the nature of a trial de novo, respondents rely on cases like *St. Joseph Stock Yards Co.* v. *United States,* 298 U.S. 38 [56 S.Ct. 720, 80 L.Ed. 1033]. However, the court in *Ray* v. *Parker* must have had those cases in mind and particularly the St. Joseph Stock Yards case because it is mentioned in the dissenting opinion. The majority opinion distinguished *Morgan* v. *United States,* 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288], where the holding was similar to that in the St. Joseph Stock Yards case.

PROCEEDINGS IN THE SUPERIOR COURT

Having in mind the type of review which the superior court could have made, let us see what actually occurred. In their petition for writ of mandate, respondents set forth that the director's findings were not supported by either the weight of evidence or substantial evidence, and that in the conduct of the hearing the director through his deputies showed such obvious favoritism and prejudice in favor of the order as to unfairly influence the vote thereon. Because of those matters, it is alleged, the issuance of said order was an abuse of the director's discretion. At the hearing in the superior court, the court could have determined the matters alleged.

But respondents made no effort to have the court do so. At the very start the court asked if in determining whether the director abused his discretion, it was to review the record before the director, respondents said, "No, I don't quite go all the way with that, Judge." The court then said, "What else can I do?" Respondents then contended that the court could take additional evidence. The court asked upon what theory was it improperly refused. Respondents then stated that it was not offered in evidence nor could it then have been produced as it was not even in existence. The court then stated that in its opinion all it could do was to look at the record. Respondents then contended that the court could remand the case to the director for further hearing. Considerable argument by both counsel followed, together with a statement of the new evidence which respondents proposed to produce. Finally the court stated that it was inclined to send the matter back to the director. Respondents' counsel replied, "That is satisfactory, Judge; *it's all I can ask.*" (Italics added.)

As we have pointed out, the review which the court could have made is a limited one. It could not permit the introduction of new evidence, particularly of evidence which was not even in existence at the time of the hearing before the director.

The court did not examine the proceedings to determine whether the director abused his discretion, whether the public hearing was noticed or conducted as prescribed by the code, or whether the director showed favoritism or prejudice as charged. While the petition for writ of mandate alleged that the findings were not supported by the evidence, no effort was made to point out to the trial court any such deficiency.

The evidence sought to be introduced and which the court ordered the director to hear was the following, none of which, excepting No. 5, was in existence or had been ascertained prior to the promulgation of the marketing order. 1. The fixing by the United States government of the 1951 support price for large lima beans and the fact that such price assures the grower a fair profit. 2. The limited warehouse and cleaning facilities in the industry assure orderly marketing and prevent the dumping of the crop in a short period of time. 3. No carryover from the 1950 crop plus a prospective 1951 short crop. 4. The initiation by the National Dried Bean Council of an extensive sales and marketing program. 5. The

change in the voting procedure in the course of the adoption of the marketing order was illegal and prejudicial to the petitioners.

No. 5, of course, was in existence prior to the marketing order, but no effort was made to point out on what facts such contention was based nor why the evidence in relation thereto could not, in the exercise of reasonable diligence, have been produced. An examination of the proceedings at the hearing in the trial court shows that no particular reliance was placed on No. 5. The stress was placed on the first ground. When asked by the court as to whether the proposed evidence (all five) was improperly excluded or even was offered, respondents stated that it was not. It was evidence which could not have been produced before the director "because it wasn't in existence." The support price was not fixed by the government until April 23, 1951, approximately one and a half months after the promulgation of the marketing order and more than 40 days after its effective date. As said by respondents, the fixing of the support price by the government "is the crux of the entire matter."

The purpose of a review in this character of proceeding is to determine if there has been any prejudicial abuse of discretion of the administrative officer by action not based upon evidence produced before such officer.

In the Tenth Biennial Report of the Judicial Council appears the statement (p. 140): "The scope of review where administrative action is challenged by the writ of mandate may be stated generally to consist of the correction of abuse of discretion." How can an abuse of discretion be determined other than by an examination of the record upon which the action was taken?

While it is true that the petition was broad enough to include an examination by the superior court of the record before the administrative officer, and while some mention of the court's doing so was made at the hearing, the reporter's transcript shows that respondents were proceeding wholly upon the theory that they were entitled to upset the director's action by events occurring subsequently to the proceeding before him. They practically said so when their attorney concluded with the statement when informed by the judge that he was remanding the proceeding to the director, that "it's all I can ask." Respondents contend that the matter should now be sent back to the superior court for a determina-

tion from the record as to whether the director abused his discretion. There can and should be only one appeal from a single matter. A litigant cannot allow a proceeding to be heard piecemeal and after the first piece has been heard, appeal. Then if the appeal goes against him, return for the hearing of another piece of the case, and then, perhaps, appeal again. Respondents made no attempt to get the court below to examine the record and it is clear that they were willing to and did, rest their case on the contention that the after-discovered evidence, rather than the proceedings which he had theretofore taken, would prove the director abused his discretion.

It is true that as yet respondents have had no judicial review of the proceedings before the director, but that is due to their own actions.

### Failure to Exhaust Administrative Remedies

 Section 1300.16, subdivision (d), of the Marketing Act provides: "The director may amend any marketing order if such amendment or amendments have been considered at a public hearing . . ." and if such amendments are assented to in writing in accordance with the provisions of the section. Before invoking the action of the courts respondents are required to exhaust this administrative remedy by applying to the director to proceed to amend. ". . . the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) Had respondents in the trial court pursued their charges in the petition that the evidence did not support the director's findings, it would not have been necessary for them to seek an amendment of the order for the reason that they would be attacking the very validity of the order itself. But they did not do so. They elected to stand on the proposition that events occurring subsequently to the effective date of the order require a change or an elimination of the order. There is a provision (§ 1300.16 (c)) for suspension or termination (by the director) of the marketing order. However, it could not become effective until the end of the current marketing season and hence would be an inadequate remedy. But the amendment process has no such limitation and would give respondents adequate relief.

The marketing order itself provides: "Section E. [Article VIII] APPEALS. Any person subject to the provisions of this Marketing Order may petition the director to review any order or decision of the Advisory Board. . . . The Director shall, if the facts stated show reasonable grounds, grant any such petition and may review or revise in any manner whatsoever any order or decision upon which an appeal is taken." Respondents did not avail themselves of this remedy. A somewhat similar situation is found in *United States* v. *Superior Court*, 19 Cal.2d 189 [120 P.2d 26]. There a marketing order as to oranges was issued by the United States Secretary of Agriculture under the provisions of the Federal Agricultural Adjustment Act of 1933, as amended (7 U.S.C.A. § 601 et seq.). Certain shippers sought in the superior court to enjoin the enforcement of the order. Thereupon the United States of America brought in the Supreme Court a proceeding in prohibition to prevent the superior court from hearing the case on the ground that the shippers had not exhausted the administrative remedies provided in the act. The Supreme Court upheld this contention. While the federal act provides for different remedies than are provided in our statute, the principle is the same. Respondents here contend that the requirement of exhaustion of administrative remedies does not apply where the validity of the order is being attacked. In the United States case the court said (p. 194): "The respondents apparently contend that the requirement of exhaustion of administrative remedies applies only to erroneous orders and does not preclude judicial interference where, as here, an order is assailed as a nullity because illegally adopted and where the agents for enforcement appointed thereunder are charged with being mere pretenders claiming powers which they do not lawfully possess. But there is no substantial difference, insofar as the necessity for resort to administrative review is concerned, between an erroneous order and one which, it is claimed, is being executed in violation of statutory authority."

Let a peremptory writ of prohibition and a writ of supersedeas issue.

Peters, P. J., and Wood (Fred B.), J., concurred.