[Civ. No. 44571. First Dist., Div. Three. Jan. 29, 1979.]

BUILDING CODE ACTION et al., Plaintiffs and Respondents, v.
ENERGY RESOURCES CONSERVATION AND DEVELOPMENT
COMMISSION, Defendant and Appellant.

914

## COUNSEL

William M. Chamberlain, Christopher Ellison, Evelle J. Younger, Attorney General, R. H. Connett, Assistant Attorney General, Roderick E. Walston, David F. Abelson and Daniel Taaffe, Deputy Attorneys General, for Defendant and Appellant.

Kipperman, Shawn, Keker & Brockett, Keker & Brockett, Joel A. Shawn, John W. Keker, William A. Brockett and Christine A. Doyle for Plaintiffs and Respondents.

## OPINION

WHITE, P. J.—On March 11, 1977, the California Energy Resources Conservation and Development Commission (hereinafter Commission or Petitioner), adopted amendments to energy conservation regulations for new residential construction pursuant to Public Resources Code section 25402, subdivision (a).[1] The new standards represent nine months of evidence taking by the Commission from its staff and other interested parties received in a series of nine public hearings commencing in June 1976 and terminating with adoption. The effective date of the amended regulations, as extended, was July 1, 1978. The Commission found their

---

[1]Public Resources Code section 25402, subdivision (a) read in relevant part as follows at the time of the Commission's action: "Within 18 months after the effective date of this

regulations to be cost effective (see fn. 1, *ante*, p. 915). Manifestly, they are vitally important.[2]

Building Code Action (hereinafter BCA) is a not-for-profit corporation, the directors of which are contractors, members of the public, engineers and architects. Paul S. Scheller is the president of a residential construction corporation. Kendrick Kellogg is an architect. BCA participated in the public hearings as "interested parties," ultimately opposing adoption of the new standards contending that they would not be economically feasible.

BCA, as aggrieved persons, then sought judicial review of the Commission's determinations and decisions contending that the standards be ordered set aside for three grounds. BCA urged the superior court, Honorable Harry J. Broderick presiding, that the Commission's regulations were reviewable under Public Resources Code section 25901, subdivision (a).[3] (With respect to environmental quality (CEQA) issues raised, BCA urged that judicial review is governed by Pub. Resources

division, the commission shall, after one or more public hearings, do all of the following, in order to reduce the wasteful, uneconomic, inefficient, or unnecessary consumption of energy: [¶] (a) Prescribe, by regulation, lighting, insulation, climate control systems, and other building design and construction standards which increase the efficient use of energy. Such standards shall be *economically feasible in that the resultant savings in energy procurement costs shall be greater than the cost of the energy conserving requirements amortized over the economic life of the building. . . ."* (Added by Stats. 1974, ch. 276, § 2, p. 515, italics added.)

[2]The Commission's petition alleges in part as follows: "In addition to the benefit to consumers of these structures resulting from lower utility bills, it was estimated at the hearings before the Energy Commission that these amendments would ultimately conserve the energy equivalent of several million barrels of oil, thereby reducing the need for expensive new energy generation and transmission facilities and easing the growth in energy demand which is a problem of international proportions for the United States economy."

[3]Public Resources Code section 25901, enacted in 1974 as part of the Warren-Alquist State Energy Resources Conservation and Development Act (§ 25000 et seq.) provides as follows: "(a) Within 30 days after the commission issues its determination on any matter specified in this division, except as provided in Section 25531, any aggrieved person may file with the superior court a petition for a writ of mandate for review thereof. Failure to file such an action shall not preclude a person from challenging the reasonableness and validity of a decision in any judicial proceedings brought to enforce such decision for other civil remedies.

"(b) The evidence before the court shall consist of the record before the commission, and any other relevant facts which, in the judgment of the court, should be considered in determining the validity of any decision of the commission.

"(c) Except as otherwise provided herein, the provisions of subdivisions (e) and (f ) of Section 1094.5 of the Code of Civil Procedure shall govern proceedings pursuant to this section."

Code, § 21168.5.) The trial court disagreed and determined that the judicial review was by way of traditional mandamus.[4] Rejecting BCA's first ground by granting the Commission's pretrial motion for summary judgment on the issue, the trial court ruled that evidence outside the administrative record would not be received for the purpose of reviewing the standards on their substantive merits, to wit: Are they cost effective? (We note that BCA's brief states that they claimed that the Commission "acted arbitrarily and capriciously.") With one minor exception not significant in this proceeding, the trial court rejected BCA's third ground of contention and determined that the Commission had complied with CEQA.

However, the trial court did rule, over objections by the Commission, that it would take evidence outside the administrative record for the purpose of determining the validity of BCA's second ground of contention, to wit: That the public hearings conducted by the Commission were unfair.

A lengthy trial followed. The trial court ultimately found that "The public hearings conducted by the . . . Commission . . . were inadequate and wanting in fairness and due process."[5] Expanding on this finding, the trial court focused on the fact that the Commission staff utilized computer models to estimate energy savings in a typical residential structure constructed in compliance with each of the new standards. The trial court's findings imply that such computer work was legally required and that the Commission had a legal duty to explain to the public in precise detail how the work was done and to allow extensive rebuttal to every detail of the staff's analysis. The court concluded that the extensive hearings held by the Commission were insufficient to provide the public with an adequate opportunity to rebut the staff work because some of the staff's assumptions had not become fixed and in full public view prior to the release of a committee report on March 4, 1977, one week prior to the adoption date. The court found that this one-week period was insufficient to allow rebuttal. The court also found that BCA was not under any duty to tell the Commission that it was surprised by any of the data contained

[4]The trial court's conclusion of law states: "That Public Resources Code Section 25901 has no application to the judicial review of regulations adopted by the respondent Commission, the exercise of such regulatory power being quasi-legislative in nature and reviewable only under Code of Civil Procedure Section 1085."

[5]The trial court's first conclusion of law is as follows: "The respondent Commission has failed to afford the public a full and fair hearing prior to the adoption of the following regulations, and such regulations should be declared invalid and the respondent should be commanded to set them aside."

in the committee report and could make that argument for the first time in the trial of the judicial review proceeding.

Declaring them invalid, the trial court issued the peremptory writ of mandate commanding the Commission to set aside the newly amended wall, ceiling and glazing regulations. The Commission was allowed until July 21, 1978, to set aside the standards. However, the Commission's appeal was a foregone conclusion; and in traditional mandamus perfecting the appeal automatically stays the effect of the writ. (See *Johnston v. Jones* (1925) 74 Cal.App. 272 [239 P. 862]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 177, pp. 4166, 4167.) Thus, the Commission's regulation would remain in effect, pending appeal. Accordingly, BCA, contending for the second time that the granted writ was petitioned for and authorized pursuant to the provisions of Public Resources Code section 25901 argued that the operation of the regulation was automatically stayed pursuant to Code of Civil Procedure section 1094.5, subdivision (f). (See fns. 3 and 9.) The trial court again rejected this argument, reasoning that the proceedings before the Commission were not quasi-adjudicatory but were quasi-legislative in nature "and reviewable only under Code of Civil Procedure section 1085." (See fn. 4; see also *Brock v. Superior Court* (1952) 109 Cal.App.2d 594, 597-603 [241 P.2d 283].) BCA then argued that it would suffer irreparable damage to its business and/or profession and that therefore an order preventing a stay of execution could be issued pursuant to Code of Civil Procedure section 1110b.[6] The trial court agreed, heard evidence on the issue, made a finding of "irreparable harm," and ordered that judgment "shall not be stayed should an appeal be filed."

Presently, then, the regulations as amended are not in effect despite the Commission's pending appeal. Petitioner seeks to remedy this situation or as it aptly states "[T]he writ of supersedeas should therefore issue to maintain the status quo pending appeal as is contemplated by C.C.P. § 916(a)."[7] BCA's expected response is that Judge Broderick's stay

---

[6]Code of Civil Procedure section 1110b, which relates to proceedings in traditional mandamus, is as follows: "If an appeal be taken from an order or judgment granting a writ of mandate the court granting the writ, or the appellate court, may direct that the appeal shall not operate as a stay of execution if it is satisfied upon the showing made by the petitioner that he will suffer irreparable damage in his business or profession if the execution is stayed."

[7]Code of Civil Procedure section 916, subdivision (a) provides: "Except as provided in Sections 917.1 through 917.9 and in Section 117ha, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

maintains the "status quo"; they argue that implementation now of the subject regulations would result in destroying, not preserving the "status quo."[8]

The Commission's position is three-pronged. Petitioner contends that the trial court correctly decided that Public Resources Code section 25901 does not apply to judicial review of quasi-legislative actions of the Commission; therefore, the trial court acted in traditional mandamus (Code Civ. Proc., § 1085) and not administrative mandamus. Secondly, it is contended that the trial court erred in issuing a stay pursuant to Code of Civil Procedure section 1110b because BCA did not make a sufficient showing of irreparable damage. Thirdly, petitioner urges that even if Public Resources Code section 25901 is held to apply judicial review in administrative mandamus to the Commission's conservation standards, this court should order that such standards are to be effective pending appeal. (Code Civ. Proc., § 1094.5, subd. (f).)[9]

■ The Commission's position assumes that Public Resources Code section 25901 prescribes review by administrative mandamus for all decisions coming within its purview. Having stated that assumption, the Commission makes the persuasive argument that the Legislature must not have intended for the Commission's rule making actions to be reviewed under that section because quasi-legislative acts have historically been reviewed under traditional mandamus.

We approach this matter from the opposite direction. We make no assumptions about what kind of review is contemplated by section 25901, but seek first to determine whether the Legislature intended section 25901 to apply to review of the Commissions' rule making function.

The Commission argues that section 25901 does not apply to review of its quasi-legislative acts, which are reviewed under the provisions of the Administrative Procedure Act (Gov. Code, § 11440). This argument is

[8]During the appeal period the state will not be without residential energy conservation. Since 1974, such regulations, originally passed by the Housing and Community Development Commission and adopted by the Commission, have been enforced.

[9]Petitioner's reply brief at page 10 accurately states: "If section 1094.5(f ) were applicable to the trial court's decision in this case, the operable language would be as follows: 'If an appeal is taken from the granting of the writ, the order or decision of the agency is stayed pending the determination of the appeal *unless the court to which such appeal is taken* shall otherwise order.' [Italics added.]"

based in part on the fact that section 25901 uses the words "determination" and "decision," instead of the more inclusive term "action" of the Commission.

This reading ignores the broadly inclusive language of the section: "Within 30 days after the commission issues its determination *on any matter specified in this division*, . . ." (Italics added.) "This division" encompasses the entire Energy Resources Conservation and Development Act, including section 25213, empowering the Commission to "adopt rules and regulations, as necessary, to carry out the provisions" of the act. It is true that section 25213 states that the Commission must conform with the requirements of the Administrative Procedure Act in its adoption of rules, and that the judicial review authorized under that act has been interpreted to be traditional mandamus review (see Gov. Code, § 11440; *Brock* v. *Superior Court, supra,* 109 Cal.App.2d 594). But there is no suggestion in the Energy Resources Conservation and Development Act that the Administrative Procedure Act should be followed both in adopting rules and in seeking judicial review of such rules.

The essence of the Commission's argument is that though section 25901 is the only provision dealing with the question of review of Commission action, this court should read into the statute a separate review procedure for quasi-legislative acts of the Commission. If rule making were only an incidental function of the Commission, covered only by the general terms of section 25213, such an interpretation might make sense. The Legislature's failure to specifically cover the subject of quasi-legislative action review might be seen as an oversight and well-established principles for review of quasi-legislative action might be applied. However, rule making is a central feature of the Commission's mandate. Public Resources Code section 25402 directs the Commission to "Prescribe, by regulation, lighting, insulation climate control system, and other building design and construction standards which increase the efficiency in the use of energy" and to "By regulation, prescribe standards for minimum levels of operating efficiency, based on a reasonable use pattern, for all appliances whose use, . . . requires a significant amount of energy on a statewide basis." Section 25403.5 requires it to "adopt standards by regulation for a program of electrical load management for each utility service area."

It is true, as the Commission asserts, that the act contains other provisions for quasi-adjudicatory determinations by the Commission, but sections 25402 and 25403.5, along with the provisions for power plant siting, which are specifically exempted from operation of section 25901,

form the core of the Energy Resources Conservation and Development Act. It cannot reasonably be said that in adopting section 25901 the Legislature intended to silently exempt from its review provisions some of the most important Commission actions. The Legislature would surely have made an explicit statement to that effect had it so intended.

Having concluded that section 25901 applies to the Commission's rule making function, we need look only to subdivision (c) of that section to determine the effect of a trial court issuance of writ of mandate. Subdivision (c) provides that "[e]xcept as otherwise provided herein, the provisions of subdivisions (e) and (f) of Section 1094.5 of the Code of Civil Procedure shall govern proceedings pursuant to this section." Subdivision (e) merely describes the manner in which the administrative mandamus writ is issued by the trial court. Subdivision (f) provides in part, with an exception not pertinent here, that "[i]f an appeal is taken from the granting of the writ, the order or decision of the agency is stayed pending the determination of the appeal unless the court to which such appeal is taken shall otherwise order." Thus, the trial court's granting of the writ had the effect of automatically staying the effect of the Commission's rules pending appeal.[10]

The Commission argues that traditional mandamus review must have been intended because great harm could come to society if trial courts could stay the effect of regulations of general applicability pending determination of appeals from writs issued by them. But even in traditional mandamus the trial court may issue such a stay under certain conditions. (See Code Civ. Proc., § 1110b.) And in administrative mandamus society is not unprotected because the appellate court may

---

[10]We must acknowledge that reading section 25901 as applicable to the Commission's rule making function raises difficult questions about the nature of the review procedure contemplated by subdivisions (a) and (b) of that section and about violation of principles of separation of powers. However, we cannot accept the Commission's approach to answering those questions. The Commission would have us conclude that section 25901 is totally inapplicable, though the Legislature clearly must have intended it to apply. Although the issue is one which will be decided on the appeal and not this supersedeas petition, we will suggest at this time that there may be a more reasonable answer to the questions which arise. For instance, subdivision (a), which is silent about which mandamus review procedure applies, could be read as authorizing whichever type of mandamus is appropriate for the type of decision reviewed. Subdivision (b) could be read as permitting evidence outside the record only to the extent that it reveals fair hearing violations not discernible from the record, or with other limitations appropriate to the kind of review. Or, alternatively, subdivision (b) could be severed and invalidated to the extent it permitted review procedures in violation of separation of powers principles. We feel confident that an approach along these lines would do less violence to the Legislature's intent than the approach offered us by the Commission.

itself stay the effect of the trial court writ. (See Code Civ. Proc., § 1094.5, subd. (f).)

When asked to stay the effect of the regulations pending appeal, the trial court concluded that the stay was not automatic, but could be issued only if the conditions of Code of Civil Procedure section 1110b were met. In effect, the trial court accepted the Commission's argument that its mandate proceedings did not take place under the provisions of section 25901. This is the same position it had taken earlier when it was asked to expand the scope of evidence allowed to be presented to attack the Commission's action. As discussed above, in our view, the learned trial court's interpretation of the nature of the review was erroneous. Thus, the stay sought by BCA should have been granted automatically under Code of Civil Procedure section 1094.5, subdivision (f). Consequently, we do not reach the abuse of discretion question.

■ Anticipating such a conclusion by this court, the Commission requested this court to stay the automatic immediate execution of the writ of mandate under the authority of Code of Civil Procedure section 1094.5, subdivision (f) (see fn. 9), which authorizes this court to order the execution of the judgment stayed.

■ The granting or denial of a writ of supersedeas has never been considered a cause within the meaning of article VI, section 14 of our California Constitution. Therefore a written opinion is not required. However, we ordered BCA to show cause why the petition should not be granted. Thereby, we utilized a convenient vehicle for oral argument of significant issues presented by the petition.

■ After careful consideration employing a balancing of hardship and/or benefit approach, we have decided not to stay execution of the judgment. In our balancing, we have weighed the harm to the public from increased building costs over and against the harm to the public from the building of energy inefficient homes during the period of appeal. The scales do not noticeably dip. The public's interest is our paramount concern. The public interest in energy saving is critical. But then the public interest includes attractive economically affordable housing as well. During the relatively short period of appeal we are unable to detect that one outweighs the other. In the long run we are satisfied that one will not exist to the exclusion of the other. On the record presented herein, we are at a loss to determine which side, energy conscious public or the industry and cost and aesthetics conscious public,

stands to suffer the most by an adverse decision on whether the regulations should be stayed.

We decline to agonize ourselves by speculating as to the final outcome of the appeal. We note that the trial court in issuing the writ gave lengthy, careful and thoughtful consideration to the issues as reflected by his extensive notice of intended decision. While we are not bound to agree with the trial court, in the exercise of our discretion at this stage, we are unable to detect anything that compels us to disagree.

Petition for writ of supersedeas is denied. Request for stay pursuant to Code of Civil Procedure section 1094.5, subdivision (f) is denied.

Feinberg, J., and Halvonik, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1979.