Filed 10/16/20  Nemer v. City of Mill Valley CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GARY NEMER, Individually and as Trustee, etc., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> CITY OF MILL VALLEY et al., <br><br>     Defendants and Respondents. | A157210 <br><br> (Marin County <br> Super. Ct. No. CIV1701132) |

Homeowner Gary Nemer filed a petition for writ of mandate and complaint against his local planning authorities over a home remodel project undertaken by Nemer's neighbors (the Geiszlers) that Nemer alleges was constructed in a manner that exceeds the scope of work that had been authorized, and violates both the conditions of its approval and the local planning code in various ways.

His operative pleading is extremely detailed and difficult to parse, as is his appellate briefing, but in substance Nemer alleges that city planning authorities turned a blind eye to his complaints about the unauthorized and illegal aspects of construction, and never held a hearing about his code violation complaints or those aspects of the construction that he complained were improper and required a variance under the local planning code.  He seeks a writ of mandate and related relief, asking the court to require the

1

City, among other things, to void the certificate of occupancy it issued after a final inspection of the completed construction and to hold properly noticed hearings about those aspects of the construction that he challenges.

The trial court granted summary judgment for the local authorities, respondents City of Mill Valley and the Mill Valley City Council (collectively, the City), and Nemer timely appealed from the judgment. We reverse.

The parties articulate the principal issue on appeal in broad terms, characterizing it as whether the City has a mandatory duty to "enforce" local law. But the only question it is necessary for us to address is quite narrow: whether the City has a mandatory duty under specific provisions of local law, redressable by writ of mandate, to revoke the certificate of occupancy it issued for the completed construction project if Nemer proves any of his allegations that aspects of the construction violate either the law or the terms and conditions of the Geiszlers' building permit. Given the procedural posture of this appeal, it is unnecessary to decide, and we do not address, whether Nemer may compel the City to initiate any legal proceedings against his neighbors. We hold that the City, on this record, did not meet its burden as the party moving for summary judgment to demonstrate its entitlement to judgment, because it did not demonstrate as a matter of law that mandamus is not available for at least some of the relief that Nemer seeks: that is, to overturn the City's approval, through the issuance of the certificate of occupancy, of completed construction that Nemer alleges violates the law. Accepting the City's position that it cannot be compelled by writ of mandate to revoke, as null and void, a certificate of occupancy that it issued for construction that violates the code or the terms of the permit would render the entire planning and permitting process a pointless exercise, because property owners could obtain a permit and then violate its terms and the

2

planning code without recourse. The City's position cannot be squared with provisions of the Mill Valley Municipal Code that declare a certificate of occupancy issued in such circumstances to be "void."

We also hold that the City did not meet its burden to prove as a matter of law that Nemer cannot prevail on his claim the City violated state and local law by failing to hold a publicly noticed hearing concerning those aspects of construction that Nemer alleges required a variance.

## BACKGROUND

### A.  The Local Regulatory Framework

By way of context, we set out the applicable provisions of the Mill Valley Municipal Code (MVMC or the Code).[1]

The City's land use ordinance, set forth in title 20 of the MVMC, is called the Zoning Ordinance of the City of Mill Valley (hereafter, the Zoning Ordinance).[2]

The Zoning Ordinance requires certain construction projects to undergo a "design review" process, governed by chapter 20.66 of the Zoning Ordinance. The declared purpose is aesthetic: "to maintain . . . the City's attractiveness and character." Pursuant to section 20.66.020, design review is required "whether or not a building permit is required." The process entails an application, accompanied by drawings and plans and written material "as may be required to clearly and accurately describe the proposed work and its effect on the terrain and existing improvements," followed by a noticed public hearing.

---

[1] Unless otherwise noted, all statutory references are to the Mill Valley Municipal Code.

[2] A complete copy of title 20 is in the record as an exhibit to Nemer's request for judicial notice in opposition to the City's motion for summary judgment.

3

In addition, the City's construction codes, contained in chapter 14.05 of title 14 of the MVMC, require a building permit "for any work governed by any of the Codes specified in this Chapter."[3] Section 14.05.032, subdivision (F) states that "[t]he issuance of a permit or approval of plans, calculations, specifications, diagrams, and computations shall not be construed to be a permit for, or an approval of any violation of any of the provisions of this chapter or of other ordinances, rules, or regulations of the City . . . ."

Under section 20.64.060, variances may be granted "[w]hen, because of special circumstances applicable to the property . . . the strict application of the provisions of this Title [20] will deprive such property of privileges enjoyed by other property in the vicinity and under identical zoning classification, or deprive provision of solar access." To obtain a variance, both the Zoning Ordinance and state law (Gov. Code, § 65905) require a noticed public hearing.

Finally, section 20.04.040 of the Zoning Ordinance requires a certificate of occupancy in order to use or occupy any building that has been erected or modified, and requires one to be issued "when a project complies with all provisions of this Title [20] and all other titles applicable thereto, including all health laws, and all conditions of any permits have been met." Section 20.04.042, prohibits the issuance of a certificate of occupancy for any structure that violates the Zoning Code and declares any such certificate of occupancy to be "null and void."[4] Similarly, section 20.68.010 requires all city

---

[3] The full text of title 14, chapter 14.05, is not in the record.

[4] In full, section 20.04.042 states: "Permit issued contrary to law is void. No building permit or Certificate of Occupancy shall be issued by the Building/Zoning Code Inspector for the use of any lot, or any part thereof, nor for the use, erection or alteration of any building or structure, contrary to the

4

officials to comply with the Zoning Code, and again declares that "<u>Any permit or license issued contrary to any of the provisions of this Title shall be void</u>."

Other provisions of the Code are discussed below, where relevant.

## B. The Geiszlers' Construction

In 2015, Nemer's neighbors, the Geiszlers, secured approvals from the City for their home renovation project. The City did not grant them any variances.

First, the Geiszlers secured approval of their design review application through a noticed public hearing process in which Nemer participated and voiced various objections to the proposed project. Nemer appeared at the initial hearing before the local Zoning Administrator who approved, "with conditions," the Geiszlers' design review application over his objections. Nemer then appealed the Zoning Administrator's decision to the Planning Commission, which held another noticed public hearing and, again over his objections, upheld the approval. Finally, he appealed the Planning Commission's decision to the City Council which, in July 2015, adopted a resolution that again denied his appeal and affirmed the Zoning Administrator's approval of the design review application.

Thereafter, on November 11, 2015, the City issued a building permit, and construction began.

In the midst of construction, in June 2016, Nemer filed a code enforcement complaint with the City alleging that various aspects of the work had not been authorized by the planning process. He supplemented that by letter on October 31, 2016, and filed another code enforcement complaint in November 2016.

provisions of this Title. Any building permit or Certificate of Occupancy issued contrary to the provisions of this Title shall be null and void."

5

In February 2017, after the Geiszlers had completed their renovation project, the City conducted a final inspection of the property and did not find any violations of the local code or the building permit. On February 23, the City wrote to Nemer advising him of the final inspection and advised him it was closing its investigation of his code enforcement complaints ("the closure letter"). It issued the Geiszlers a certificate of occupancy.[5]

## C.    The Prior Lawsuit

This is the second lawsuit Nemer has filed against the City and the Geiszlers concerning their home renovation project. The first lawsuit he brought against them provides necessary context for a proper understanding of the scope of Nemer's current claims, and so we briefly describe that prior litigation.

In October 2015, after the City Council had approved the project but before the issuance of a building permit and commencement of construction, Nemer filed a verified petition for writ of mandate against the City, and filed an amended pleading in February 2016 to add the Geiszlers as defendants. His original claims, as amended, sought to challenge the City's approval of the Geiszlers' project and asserted related due process claims, and on demurrer were held to be time-barred. His second amended pleading sought a writ of mandate compelling the City to require the Geiszlers to halt construction he alleged had not been approved. In October 2016, the trial court sustained a demurrer without leave to amend, on the grounds the City had no mandatory duty to require the Geiszlers to stop their construction, and Nemer had failed to exhaust his administrative remedies, as his code

---

[5] The parties have not directed us to any evidence of this in the summary judgment record. But Nemer alleged that the City issued one (at some unspecified date) and the City did not controvert or even address that allegation in its summary judgment papers.

violation complaint had been filed just days before he filed his second amended petition but he did not allege it had yet been acted upon.

## D. This Litigation

Five months later, in March 2017, after the City sent its closure letter to Nemer advising him of the result of its final inspections, Nemer commenced this new action against the City and the Geiszlers.

His operative pleading is not a model of clarity, but we do not construe it as challenging the design review approvals or issuance of the building permit. Rather, he seeks to compel the City to void the certificate of occupancy because of alleged code and/or permit violations, and to hold a hearing about his Code violation complaints and the allegedly illegal aspects of the completed construction.

His operative pleading, a verified first amended petition for writ of mandate, alleges the Geiszlers installed many improvements that were not covered by the design review approval, exceed the scope of the building permit, violate the Code and would require a variance, and also that the City violated procedural due process by allowing the Geiszlers to construct them without any notice or public hearing. He also alleged the City knew about these unauthorized improvements before it issued a certificate of occupancy to the Geiszlers and allowed these various Code violations despite the filing of Nemer's Code violation complaints.

The allegedly unauthorized improvements encompass everything from major aspects of the project—including alleged violations of the City's size and density requirements—to construction minutiae.[6] Nemer also alleges the

---

[6] They include allegedly unauthorized wood burning fireplaces; "off-lot parking" that varied from the approved parking; "conversion of required on-lot parking in the existing garage to another use that had to be maintained"; "construction of a new wall and corresponding changes to the construction of

7

Geiszlers failed to install "[v]arious improvements and elements" that the City had required as a condition of its approval, "including required noise reduction systems in the patio deck."

Nemer alleges four causes of action against the City (the first through third, and the fifth). They are somewhat obtuse, and we summarize them as best we can. His first cause of action is for a writ of mandate (praying both for administrative mandate pursuant to Code of Civil Procedure section 1094.5 and ordinary mandate pursuant to section 1085). It alleges "the City has failed to provide a hearing required by law, [and] is without jurisdiction to permit the Unpermitted Improvements," alleges the City's failure to comply with the "required notice and approval process is a violation of the Code," prays for a writ "requiring the City to comply with its duties under the Code" and alleges that "any permit that is granted based upon an approval that violates the Municipal Code is void."

The second cause of action likewise seeks a writ of mandate. It overlaps to some extent with the first cause of action, but in substance alleges the City "apparently provided [the Geiszlers] a hidden approval procedure that violates the Code, state law and due process," and challenges the City's

_____

the patio deck"; elimination of a concrete wall beneath the patio; construction of additional "developed space" that was never approved and that resulted in the home exceeding both size and density limits under local law (including new space under the deck, a "rumpus room," and "other spaces within the main building"); "additions of or improvements to ancillary structures" that were never approved and "exceed the number of such structures permitted under the Code"; unapproved doorways, windows, various utilities, fixtures, appliances, foundation and framing (including electrical and gas subpanels, smoke detectors, electrical outlets, vents, pipes and ducting); various facets of ventilation, as well as underfloor access and chimney spark arrestors; unauthorized demolition, including demolition of interior space; construction that violates the density and square foot limitation of the Code; and new patio tiling and lighting fixtures that violate the Code.

denial of his Code violation complaints and the City's approval of the Geiszlers' construction pursuant to the alleged "hidden process" as an abuse of discretion, a violation of state law and procedural due process.

The third cause of action is brought pursuant to 42 U.S.C. section 1983 for violation of procedural due process. It alleges the City was required to give adjacent property owners reasonable notice and an opportunity to be heard before approving all of the construction, and violated procedural due process by "grant[ing] rights to [the Geiszlers] that exceed[] the City's authority and jurisdiction including the right to construct Unpermitted Improvements and granting variances without giving reasonable notice or holding a public hearing or any findings in support thereof."

His fifth cause of action seeks declaratory relief. He alleges the existence of a dispute with the City as to whether the Geiszlers' construction exceeds the approvals and violates the Municipal Code and whether the City has discretion to refrain from enforcing the Municipal Code.

Nemer requests an order requiring the City to void the Geiszlers' certificate of occupancy; a writ of mandate commanding the City "to resolve the Code violations on a date certain" and "to afford [him] all of the due process protections required under the law"; as well as fines, damages and other remedies, including "injunctions that will remedy the Code violations."[7]

The City moved for summary judgment. It contended the first cause of action (for writ of mandate) and the third cause of action (for violation of due

---

[7] Nemer also prays for an order requiring the City to "void the permits," but in the context of his factual allegations we construe that merely as a request to void the certificate of occupancy and not the building permit. Moreover, Nemer concedes (at page 8 of his opening brief) that the building permit issued by the City "did not expand the work approved in the [design review] Approval" and the work it described "did not violate the Code."

9

process) were barred because the City's notice in connection with the Geiszlers' design review application satisfied due process.[8]  It argued the second cause of action (for writ of mandate) failed, as did the fifth cause of action for declaratory relief, because the City has no ministerial duty to enforce the Municipal Code in the manner Nemer seeks.[9]  The trial court agreed, and granted summary judgment on these grounds.  Judgment was entered, and this appeal by Nemer followed.

## DISCUSSION

Appellate review of an order granting summary judgment is governed by well-established standards.  " 'Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant seeking summary judgment bears the initial burden of proving the "cause of action has no merit" by showing that one or more elements of plaintiff's cause of action cannot be established or there is a complete defense.  [Citations.]  Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.)  On review of an order granting summary judgment, " '[w]e review the trial

---

[8]  It also argued the first and third causes of action are barred by res judicata, but it has not reprised that contention on appeal.  Therefore we will not consider that issue.

[9]  It also argued the second cause of action was barred because Nemer could not prove the City approved any construction pursuant to a "hidden procedure."  It asserted that all of the challenged improvements either had been approved through the design review approval process or the City's issuance of the building permit or did not require any approvals.  Again, it has not reprised that argument on appeal as a reason it is entitled to judgment as a matter of law.

10

court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) Summary judgment is no longer a disfavored procedure, but "is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)

This summary judgment appeal presents some challenges, however. The parties' briefing is legally and factually complicated, and Nemer's (lengthy) briefing is particularly challenging. His opening brief asserts dozens of points captioned under numerous headings and subheadings. And much of it is difficult to understand, due both to his confusing and excessive use of defined terms, and the lack of coherent legal arguments specifically directed to the grounds upon which the trial court ruled. We will address only those points raised by Nemer that are both intelligible and necessary to our decision, and we will attempt to state his position where pertinent as succinctly as we can as we understand it.[10] (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [where appellate briefing is "disorganized" and "often incoherent," and appellant failed to support many points with cogent argument, legal authority or specific citations to the record, appellate court will consider only those arguments "for which we can discern a legal or factual basis in the briefs" and disregard

_____

[10] We also do not consider arguments that Nemer raises for the first time in his reply brief. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 592.)

11

" 'conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt' "].)

Another difficulty is that the parties do not specify which causes of action their appellate arguments pertain to, a task that is understandably somewhat difficult given the degree of factual and legal overlap between Nemer's four claims. Nor has the City asserted that it is entitled at a minimum to summary adjudication of some of Nemer's claims, even though it moved below for summary adjudication of each cause of action in the alternative.

We will not attempt to parse Nemer's causes of action, either. Although his pleading is challenging to understand, the parties appear to agree on appeal that its thrust is to compel the City to enforce the Municipal Code with respect to the allegedly illegal and/or unauthorized improvements and to provide a publicly noticed hearing regarding the allegedly illegal improvements. For the following reasons, we conclude the trial court erred in granting judgment on these claims.

## I.

### *The City Has a Duty Under the Mill Valley Municipal Code to Declare Void a Certificate of Occupancy Issued in Violation of the Law, and Such Duty Is Redressable Through a Writ of Mandate.*

The City did not move for summary judgment on the ground that the undisputed material facts establish as a matter of law that, contrary to Nemer's allegations, the Geiszlers' remodel project fully complies with the Mill Valley Municipal Code and the terms of the design review approval and the permit. It did not, for example, specifically address each alleged violation enumerated in Nemer's complaint and demonstrate that no such Code

12

violation exists. Nor does it do so on appeal. As Nemer says, "the City did not disprove or even refute those factual allegations."

Rather, the fundamental disagreement here is a legal one. Nemer argues the City must enforce its zoning codes and that its "inaction" in the face of illegal work and issuance of a certificate of occupancy is ultra vires and void. The City argues that it has no mandatory duty to enforce the zoning code because the decision whether to enforce the Code and revoke permits is inherently discretionary, akin to the exercise of prosecutorial discretion, and discretionary duties are not redressable through a writ of mandate. Thus, it contends, Nemer's arguments that the Geiszlers constructed improvements that violate the Code "are beside the point."[11] "More importantly, it would not matter even if the record showed that the Geiszlers constructed unapproved improvements. . . . Even if some elements of the Geiszlers' construction were illegal, [Nemer] nevertheless fails to demonstrate he is entitled to the issuance of a writ of mandate." We disagree.

At least one aspect of Nemer's causes of action *does* involve a mandatory duty that is redressable by way of mandamus, and so the City did not demonstrate its right to judgment as a matter of law on Nemer's causes of action in their entirety. That is Nemer's request, stated in the first paragraph of his complaint and incorporated by reference into every claim

---

[11] The City also adds, in passing, "such arguments are unsupported by the record." It does not explain how, other than to assert tautologically that any improvements that were depicted in the Geiszlers' design review plans *were* approved by the City. But Nemer alleged the Geiszlers' project exceeded the scope of the City's approvals. As the party moving for summary judgment, it was the City that bore the burden to show Nemer could not prove those alleged violations and not the other way around.

pled against the City, for an order requiring the City to void the certificate of occupancy.

A writ of mandate " 'may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .' (Code Civ. Proc., § 1085, subd. (a).)." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 (*Kavanaugh*).) To be entitled to relief, the petitioner must show "a clear, present and ministerial duty" on the part of the public official and "a clear, present and beneficial right to performance of that duty." (*Ibid.*) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' " (*Ibid.*) The existence of a ministerial duty is a question of statutory interpretation that we review independently when, as here, it does not turn on disputed facts. (*Ibid.*; accord, *National Asian American Coalition v. Newsom* (2019) 33 Cal.App.5th 993, 1007-1008.)

The City's position that it has discretion to issue a certificate of occupancy for construction that violates its local ordinance is not the law. *Horwitz v. City of Los Angeles* (2004) 124 Cal.App.4th 1344 (*Horwitz*), a decision Nemer has cited but the City has not addressed, upheld the issuance of a writ of administrative mandate that required a municipality to revoke a homeowner's building permit and certificate of occupancy because the remodeled home violated city setback requirements. Due to an erroneous calculation of the setback, building permits were issued in error for the project and the completed house was 14 feet closer to the street than allowed by the local code. (*Id.* at p. 1347.) While construction was underway, the

14

homeowner's neighbors challenged the building permits through administrative channels, but the city ultimately rejected their challenge and later issued a certificate of occupancy. The neighbors then sought a writ of administrative mandate to compel the city to void all of the homeowner's permits. (*Id.* at pp. 1347-1353.)

The trial court determined the city had prejudicially abused its discretion, because, even giving appropriate deference to the city's interpretation of its own zoning code, the city had misinterpreted (and therefore misapplied) its setback ordinance when issuing the building permits and then rejecting the neighbors' challenge to them. The court issued a writ of mandate compelling the city to revoke both the building permits *and* the certificate of occupancy. (*Horwitz, supra,* 124 Cal.App.4th at pp. 1353-1354.)

The sole issue on appeal was whether the trial court had exceeded its authority under Code of Civil Procedure section 1094.5, and the court of appeal held it had not. (See *Horwitz, supra*, 124 Cal.App.4th at p. 1355.) It reasoned that the house "must conform to the mandatory requirements of the zoning ordinance. . . . [T]he remodeled house does not conform because the prevailing front-yard setback was miscalculated by [the homeowner] and mistakenly accepted by the City. Just as the City has no discretion to deny a building permit when an applicant has complied with all applicable ordinances, the City has no discretion to issue a permit in the absence of compliance. [Citations.] It follows that [the] permits must be revoked." (*Id.* at pp. 1355-1356; accord, *Summit Media LLC v. City of Los Angeles* (2012) 211 Cal.App.4th 921, 940-941 [writ of mandate lies to compel city to revoke permits issued in violation of local law; "permits issued in contravention of municipal ordinances are invalid" and "the city does not and did not have the

15

discretion to issue permits that contravened existing municipal ordinances"].) The court of appeal held the trial court had properly compelled the city to revoke the permits, rather than remand the matter back to the city to reconsider its action and recalculate the proper setback, because there was no discretion to be exercised in determining the correct setback, which was simply a matter of applying the setback formula to particular measurements. (See *Horwitz*, *supra*, 124 Cal.App.4th at p. 1355.) But there was no question that the erroneous decision had to be corrected somehow. (See *id*. at p. 1356 [rejecting city's argument that it should be permitted to remedy the situation itself after proper calculations are made; "While we agree that the proper calculations have to be made, we do not see any basis in law, fact, or fairness to allow the City or [homeowner] to keep the improperly issued permits in place so that they become the foundation for decisions that will thereafter have to be made"].)

To similar effect is *Terminal Plaza Corp. v. City and County of San Francisco* (1986) 186 Cal.App.3d 814 [Kline, P.J.] (*Terminal Plaza*), a decision cited in *Horwitz*. (See *Horwitz*, *supra*, 124 Cal.App.4th at p. 1356.) In *Terminal Plaza*, this court reversed the denial of a writ of mandate pursuant to Code of Civil Procedure section 1085 on the ground the City of San Francisco and certain of its departments and officers had a ministerial duty to enforce the clear, unambiguous portion of a planning commission resolution that required a commercial developer, as a condition of developing a 43-story office tower, to construct a pedestrian walkway. (See *Terminal Plaza,* at pp. 830-836.) We held the local zoning administrator had no discretion to decide whether the condition had been violated, in light of the condition's clear language. (*Id*. at p. 830.) We explained that, " '[w]here a statute or ordinance clearly defines the specific duties or course of conduct

16

that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion. [Citations.]' [Citation.] In such case, the functions of the officer are ministerial and the writ may be issued to control his action." (*Id.* at pp. 831-832.)

Moreover, nothing in the local planning code conferred discretion on the zoning administrator to decline to enforce the development condition. (See *Terminal Plaza, supra,* 186 Cal.App.3d at p. 834.) Examining various aspects of the San Francisco's planning code, we concluded: "While the zoning administrator may have discretion in a wide range of technical areas to carry out the intent of the code, particularly with respect to issues such as variances and conditional use permits, we find it inconceivable that he has the power to countermand particular conditions explicitly imposed upon a development project by the commission and approved by the board of permit appeals, such as are embodied in resolution 8877. There is no room for the zoning administrator to interpret the resolution contrary to its express terms, and we do not read these code sections so broadly as to grant to the zoning administrator this remarkable authority. That the administrator may choose among various enforcement mechanisms to secure compliance with the code, does not grant him authority to ignore the express requirement of the condition adopted by the commission." (*Id.* at p. 834.) As in *Horwitz*, our analysis in *Terminal Plaza* turned in large part on the fact that the obligation was clear and obvious, with no room for disagreement or the exercise of any discretion as to the manner in which the resolution should be construed. (See *id.* at pp. 832-833; see also *id.* at p. 832, fn. 11, distinguishing *Blankenship v. Michalski* (1957) 155 Cal.App.2d 672 (*Blankenship*).)

17

In this case, the City contends it has no duty enforceable by way of writ of mandate to enforce any part of its Municipal Code. That proposition sweeps far too broadly. It might be the case that, on a fuller record, it could be shown that because some or all of the alleged violations are not sufficiently clear that, unlike in either *Horwitz* or *Terminal Plaza*, they do require the exercise of some discretion to decide whether the Geiszlers' construction complies with the Code, in which case mandamus would not lie to compel the City to exercise its discretion as to those violations in a particular way. But because the City did not address the alleged violations (factually or legally), it did not meet its summary judgment burden to show that Nemer cannot prove the existence of a ministerial duty as to *any* of them.

As noted, the existence of a ministerial duty is a legal question of statutory interpretation. (*Kavanagh*, *supra*, 29 Cal.4th at p. 916; accord, *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 701) As in *Terminal Plaza*, we find nothing in the Municipal Code that grants city officials discretion to issue a certificate of occupancy for a construction project that violates the Code and/or exceeds the scope of approvals granted through the design review and permitting process.

On the contrary, Nemer has cited a number of provisions of the Code that, taken together, indicate no such discretion exists. Section 20.04.040 states that "The Building Official shall issue a Certificate of Occupancy when a project complies with all provisions of this Title [20] and all other titles applicable thereto, including all health laws, and all conditions of any permits have been met." Section 20.04.042 states that "[n]o . . . Certificate of Occupancy shall be issued . . . contrary to the provisions of this Title" and

18

that "[a]ny . . . Certificate of Occupancy issued contrary to the provisions of this Title shall be *null and void*."[12]  (Italics added.)

The City does not address these provisions.  Instead, it cites two other provisions of the Municipal Code that it contends confer discretion on local building officials to take the actions alleged here, and on that basis attempts to distinguish *Terminal Plaza.*  But neither provision it cites is pertinent.

One is section 20.64.140 of the Code, which the City says "governs the City's enforcement of the terms in building permits."  It does not.  That section provides that "[a]ny *use* permit or variance may be revoked" if its conditions or terms are violated or for other good cause.  (Italics added.)[13]  We agree with Nemer, who asserts that the City has misquoted that provision in its brief.  Nemer is not alleging that the terms of a *use* permit or variance have been violated, and so any discretion city officials may possess with regard to revoking those entitlements is not relevant.

---

[12]  These provisions of local law declaring such permits to be "void" differ from, and are stricter than, state law standards.  The California Building Standards Code states that a local building official "*is authorized to*, in writing, suspend or revoke a certificate of occupancy or completion issued under the provisions of this Code wherever the certificate is issued in error, or on the basis of incorrect information supplied, or *where it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this Code*."  (Cal. Code Regs., tit. 24, pt. 2, § 111.4, italics added.)  Unlike local law, the state regulations do not declare a certificate of occupancy to be "void" in these circumstances.

[13]  Pursuant to section 20.64.010 of the Code, a conditional use permit "may be issued for any of the uses or purposes for which such permits are required by the various zoning district regulations" or "for any temporary activity, including, but not limited to, any commercial or non-commercial festival, exhibit, or other similar activity, provided that the total duration thereof does not exceed two days."

The City also cites section 8.01.020 of the Code, which likewise does not apply. Here again, the City has quoted a portion of that ordinance out of context, relying principally on a sentence governing the issuance of criminal citations. Captioned "General Code Enforcement Authority," it states: "The City Manager and enforcement officers, as defined in Chapter 8.02 of this Code, have the authority and powers necessary to gain compliance with the provisions of this Code and applicable state codes. These powers include, but are not limited to, the power to use whatever judicial and administrative remedies are available under this Code and applicable state codes. Enforcement officers, excluding peace officers (whose powers are otherwise specified in the California Penal Code), have the power to issue criminal citations, as authorized under California Penal Code Section 836.5, *with respect to provisions of this Code and applicable state codes it is their discretionary duty to enforce.*" (Italics added.) Section 8.01.020 does not specify which provisions of the Municipal Code enforcement officers have a "discretionary duty to enforce," however. We do not construe it as in any way conflicting with, or overriding, those provisions of the Zoning Ordinance that flatly *prohibit* local officials from issuing a certificate of occupancy to a construction project that violates the Code and declares as "void" any such certificate of occupancy.

Accordingly, we conclude that, as a matter of statutory interpretation under the Mill Valley Municipal Code, the City has a mandatory duty to void the certificate of occupancy it issued to the Geiszlers if Nemer proves his allegations that the construction violated the Code or the terms and conditions of the permits.

Finally, the City argues that its decision whether to prosecute a resident for a violation of its municipal code is inherently discretionary and

20

falls within its prosecutorial discretion. But here again we agree with Nemer, who in substance asserts that the question here is not one of deciding whether to "prosecute" the Geiszlers. To be sure, the Code gives City officials the power to initiate abatement proceedings to redress Code violations as a public nuisance, pursuant to section 20.68.030. And, pursuant to section 20.68.020, violations of the Zoning Ordinance are an infraction, punishable by a fine of up to $100 for every day the violation persists. But it is unnecessary to decide whether Nemer is even seeking to compel the City to take either step much less whether, if he is, mandamus will lie to compel the City to do so.[14] At a minimum, Nemer *is* seeking a writ to compel the City to declare as null and void the certificate of occupancy that *it* issued to the Geiszlers and to hold appropriately noticed hearings for those aspects of the construction that, as we understand him, require either a variance and/or design review approval. Whatever discretion local officials may possess to *initiate* legal proceedings against a resident for violations of local planning codes (see, e.g., *Blankenship*, *supra*, 155 Cal.App.2d at pp. 675-676), the Code itself (1) declares in self-executing terms that offending permits and certificates of occupancy are void, and (2) requires publicly noticed hearings for construction that requires a variance. The City has cited nothing that

_____

[14] It is not clear from his pleading whether Nemer seeks a writ of mandate compelling the City to levy fines against the Geiszlers, or whether he merely seeks to recover fines directly from the Geiszlers himself, as specifically prayed for in his fourth cause of action asserted against them. Nor is it clear whether his request for "injunctions that will remedy the Code violations" is intended as a request for a writ of mandate compelling the City to initiate legal action against the Geiszlers, or whether it is merely duplicative of his request for orders compelling the Geiszlers to cease further construction he alleges is improper and to remove any allegedly improper improvements.

suggests its officials possess discretion to exempt any residential remodel project from these provisions of local law.

The City's analogy to prosecutorial discretion also is foreclosed by our decision in *Terminal Plaza*. There, we specifically rejected the contention that local planning officials must have discretion analogous to that of a district attorney to decide, within limited public resources, which violations of the city's planning code warrant enforcement. (*Terminal Plaza, supra,* 186 Cal.App.3d at p. 835.) No case law supported granting such broad prosecutorial discretion to a zoning administrator, and we reasoned that cases upholding the right of a district attorney to exercise prosecutorial discretion in the selection of cases to pursue were not analogous. (*Ibid.*) The position and duties of the local zoning administrator, which in that case operated within the local planning department and was answerable to the local planning commission, was "fundamentally distinct from the position, the duties and the necessary independence of a district attorney."[15] (*Ibid.*)

---

[15] In *Terminal Plaza*, we confined our analysis of prosecutorial discretion to the facts before us, making clear that the only question we decided was in the context of a major commercial development. We explained, "[t]he theory that a zoning administrator may ignore and not enforce requirements of specific resolutions of the commission conditioning development of major construction projects seems to us qualitatively very different from and not supported by the fact that a zoning administrator may choose not to pursue a nonconforming use or a minor nuisance. If we were to accept respondents' theory we would make a mockery of the planning commission and the entire planning process." (*Terminal Plaza, supra,* 186 Cal.App.3d at p. 835, fn. omitted.) We expressly did not decide whether a zoning official enjoyed some limited prosecutorial discretion to refuse to prosecute "these latter 'minor' nuisances" because the issue was not presented. (See *id.* at p. 835, fn. 15.) The City does not argue, however, that the facts of this case require us to answer the question left open in *Terminal Plaza*. It simply argues that it enjoys blanket discretion to decline to enforce its zoning laws. That proposition is at odds with both the letter and spirit of

22

The City's prosecutorial discretion argument ignores this aspect of *Terminal Plaza.*

For all of these reasons, we conclude the trial court erred in granting judgment for the City as a matter of law on Nemer's claims seeking a writ of mandate to compel the City to declare the Geiszlers' certificate of occupancy null and void on the basis of violations of the Code and for violations of the terms and conditions of its approvals. The City did not demonstrate as a matter of law it has no duty to enforce those provisions of local law and conditions of construction approval that Nemer alleges the Geiszlers' actual remodel project, as constructed, violated.

## II.

### *The City Is Not Entitled To Judgment As a Matter of Law on Nemer's Claims That He Had a Right to Notice and a Hearing Concerning Allegedly Improper Construction.*

Next is the question whether the City is entitled to summary adjudication of Nemer's bid to secure a public, noticed hearing concerning those aspects of the construction he alleges exceed the scope of approvals or otherwise violate the Code. Among other things, Nemer contends the City failed to meet its initial burden as the party moving for summary judgment to establish he had no right to a hearing on the many violations alleged in the first amended petition.[16] This point is not well briefed by Nemer, but we conclude he has met his burden to demonstrate error in one limited respect.

---

*Terminal Plaza* and would similarly "make a mockery of . . . the entire planning process" undertaken here, beginning with the design review application, followed by issuance of the building permit and culminating with the City's final inspection and issuance of a certificate of occupancy.

[16] His opposition papers below do not clearly articulate this problem. Nevertheless, the City does not argue the issue has been forfeited. And it clearly presents a pure issue of law—i.e., the City either did or did not carry its initial burden as the party moving for summary judgment. Moreover, it is

23

## A. State and Local Law

Nemer argues the City did not disprove or even refute the allegations that some work was done without obtaining required variances. In particular, he alleged that illegal work was done that required variances and yet the City failed to provide "notice and a hearing as required by the Municipal Code," and that its procedures violated state law as well. As summarized above, the Mill Valley Municipal Code requires notice and hearing before a variance is granted.[17] Yet, the City did not controvert Nemer's allegations that some aspects of the work violated the Code and required a variance; its evidence did not address that issue.[18] And Nemer opposed summary judgment on the ground, inter alia, that no variance hearing was held. The City's motion merely attempted to shift the burden *to Nemer* to prove that a variance was required: citing to various provisions of state and local law, it simply *argued* that Nemer "falsely assumes that the Geiszlers needed a variance for their construction project. He is wrong." The

---

fundamental to our analysis under the framework governing summary judgment. Accordingly, to the extent the problem was not directly raised below, we exercise our discretion to consider it.

[17] Although Nemer does not cite the provision, so does state law. (See Gov. Code, § 65906.)

[18] The City introduced a conclusory declaration from the City's Building Official who opined that, at the City's final inspection in February 2017 which she attended, "the City did not find any violations of the City Municipal Code or the Building Permit." But the City's determination that no Code violations exist is the very assessment Nemer seeks to challenge in this lawsuit. The City did not introduce evidence demonstrating specifically that every challenged aspect of the construction complied with the Code and required no variance from the Zoning Ordinance (such as by way of Nemer's responses to discovery, for example, or some other method of competent proof).

City does not reprise that argument on appeal; its respondent's brief does not even address the variance issue.

Public officials cannot authorize a development that, by law, requires a variance without holding properly noticed public hearings and making an appropriate administrative record. The law does not permit circumvention of these important procedural requirements for granting an exemption from otherwise applicable zoning laws. (See *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 182 [invalidating settlement agreement between municipality and developer that "functionally resembles a variance"].) If local agencies could avoid judicial review of planning decisions "simply by approving a project without any formal grant of a variance, even though the project is not in compliance with the requirements of the applicable regulations governing land use and development, those regulations could be substantially amended or voided simply by ignoring them and approving noncomplying developments." (*Orinda Assn. v. Contra Costa County* (1986) 182 Cal.App.3d 1145, 1162, fn. 10.)

The City's failure to controvert Nemer's allegations about required variances, and the lack of notice and a hearing about them, is fatal. Nemer had no burden to prove a variance was required. "The pleadings delimit the issues to be considered on a motion for summary judgment. [Citation.] *The defendant must present facts to negate each claim as framed by the complaint* or establish a defense. Only when this prima facie showing is made must the plaintiff demonstrate the existence of a triable, material issue." (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 891, italics added; see, e.g., *Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 651-652 [discussing moving party's initial burden as defined by complaint's factual allegations]; see also *AARTS Productions, Inc. v. Crocker*

25

*National Bank* (1986) 179 Cal.App.3d 1061, 1064 [appellate court reviewing grant of summary judgment must "identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading"]; *Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885 [appellate court cannot affirm summary judgment on a ground not framed by the pleadings], revd. on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490.)

Accordingly, because the City did not negate Nemer's allegations that some aspects of the work required a variance, the City did not demonstrate its right to judgment as a matter of law on Nemer's allegations that he has a right under the Mill Valley Municipal Code and state law to notice and a hearing about those aspects of the construction.

### B.    Due Process

Nemer has not demonstrated the trial court erred in granting judgment as a matter of law on his constitutional claims, however.

Scattered throughout his pleading across multiple causes of action (the first through third), Nemer alleged that he had a procedural due process right to notice and a hearing concerning the "Unpermitted Improvements," which included:  (a) those aspects of construction he alleged violated the scope of approvals granted pursuant to the design review approvals; (b) those aspects of construction he alleged required a variance; and (c) the City's decision on his code violation complaints.

Addressing Nemer's first cause of action (for writ of mandate) and third cause of action (brought pursuant to 42 U.S.C. section 1983), the City moved

26

for judgment as a matter of law on the ground that it had satisfied due process requirements, and the trial court agreed.

We are unable to discern an intelligible legal argument for reversal on Nemer's due process claims. His opening brief makes broad, sweeping references to the requirements of due process, and he also cites legal authority that land use decisions that "substantially affect" the property rights of owners of adjacent parcels constitute deprivations of property within the meaning of procedural due process, entitling the property owner to reasonable notice and an opportunity to be heard. (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612, 615 [subdivision approval].) But Nemer has not explained why any of his allegations in this case rise to that level. (Compare, e.g., *Drum v. Fresno County Dept. of Public Works* (1983) 144 Cal.App.3d 777, 782 [granting a variance to construct two-story garage requires notice and hearing] with *Robinson v. City and County of San Francisco* (2012) 208 Cal.App.4th 950, 963-964 [no procedural due process right to notice and hearing before city authorizes installation of wireless antennas on utility poles near homes; "notice and a hearing . . . are [not] constitutionally required before every planned alteration to a property, no matter how insignificant"].)

For these reasons, it is unnecessary to address the City's arguments (raised for the first time on appeal) that Nemer's due process claims fail because there was no state action involved, and because he has no constitutionally protected property interest in receiving notice and a hearing on his code violation complaints.

27

## DISPOSITION

The judgment is reversed with directions to vacate the order granting summary judgment and to enter a new and different order denying summary judgment and granting summary adjudication for the City on the third cause of action for violation of procedural due process pursuant to 42 U.S.C. section 1983, and on the first cause of action to the extent it alleges in paragraph 80 a violation of procedural due process.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

_Nemer v. City of Mill Valley_ (A157210)